FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

98 JAN 30 AM 9: 59

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GEORGIA MARBLE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 97-PT-0514-E |
| ) | |
| PROMAC, INC., et al., ) | ENTERED |
| ) | |
| Defendants. ) | JAN 3 0 1998 |

Memorandum Opinion

    This cause comes on to be heard on a motion for summary judgment filed by the defendant Wingfield Engineering Company, Inc., ("Wingfield"), on November 4, 1997, and a contrary motion for summary judgment filed by the defendants Internal Revenue Service and United States of America ("Government") on December 9, 1997.[1] The parties have agreed that the case is appropriate for summary judgment, one way or another. The present cause is an interpleader action, in which appropriate distribution of $31,272.93 in funds is contested between Wingfield and the Government.[2] All other parties to the action have eschewed any

---

    [1] See a recorded telephone conference of January 22, 1998 and stipulations of the parties in that conference.

    [2]The parties have agreed that there is no distinction to be made between the $22,950.00 and $8,312.00. In other words, it's all or nothing at all. See subsequent recorded conference of January 29, 1998.

interest in the monies. The dispute between Wingfield and the Government centers on the priority of the Government's tax lien on the funds over Wingfield's garnishment lien.

## Facts

Georgia Marble and Promac, Inc. (Promac), entered into a contract whereby Promac was to perform engineering work for Georgia Marble in an expansion project at its marble crushing facility near Sylacauga, Alabama. For the work, Promac was to be paid $223,500, approximately ten percent of which, $22,950.00, was to be retained by Georgia Marble, pending approval of final engineering drawings and documentation. Although Promac was unable to complete the work, its successor company, Project Systems, Inc., informed Georgia Marble on September 3, 1996, that it could complete the work for an estimated $32,000.00, consisting of the $22,950.00 retainage fee and an amount for additional work to be performed. The parties dispute when final approval of the final engineering drawings occurred. Wingfield contends that the date is October 31, 1996, when Project Systems submitted its final contract billing to Georgia Marble for $22,950.00. At that time, states Wingfield, Georgia Marble knew that, in addition to the $22,950.00, it was also obligated to pay Georgia Marble the additional $8,312.00. The Government, by contrast, contends that the final approval of final engineering drawings and documentation occurred on December 5, 1996, when Travis Ousley, Georgia Marble's project manager approved the engineering drawings and Georgia Marble received the invoice of Project Systems, Inc., for the $8,312.00.[3]

## Analysis

Both parties, each of which has claims exhausting the entire amount held by Georgia Marble, agree that the present claim to the funds is to be resolved by determining who has priority of interest and that federal law governs priority of interests. They also agree, however, that state law determines when there is an interest. Wingfield claims that it served

---

[3]In the January 29, 1998 conference, the parties agreed that either party's entitlement is dependent upon entitlement to the funds by Promac. Thus the court will refer only to Promac as the debtor. The parties agree that Project Systems, Inc. is not involved in the analysis except peripherally or perhaps as a principal of Promac.

on Georgia Marble a process of garnishment on August 15, 1996, and properly filed a certified copy of its judgment against Promac in the Probate Office of Talladega County, Alabama, on September 26, 1996. There is no contest from the Government that process of garnishment was properly served or that the judgment was properly filed. The Government filed its tax lien for $31,272.93 on the funds on November 18, 1996. Wingfield does not contest that the lien was properly filed and that the Government's interest in the funds dates from November 18, 1996. Both parties agree that if Wingfield's garnishment lien was not "perfected" by November 18, 1996, the Government prevails. Wingfield's lien would be "perfected", both parties agree, when Promac had a recoverable interest in the amount. If Promac had an interest in the amount before November 18, 1996, Wingfield prevails.[4] The Government argues that Wingfield's interest in the funds was not "perfected" until December 5, 1996, when, the Government alleges, final approval of the engineering drawings was obtained and Georgia Marble received the invoice for $8312.00. Against this, Wingfield argues that October 31, 1996 is the date on which Promac acquired an interest in the funds, when it submitted its final contract billing to Georgia Marble and before which all work had been completed and that, because the interest of Promac in the funds accrued on October 31, 1996, Wingfield's interest in the funds was perfected on that date.[5]

The central issue in this case is when Promac acquired an interest in the funds that would permit Wingfield's interest in the funds to be perfected. Both sides agree that state law governs with regard to whether Promac had an interest. Under Alabama law, "[t]he rights of the plaintiff in garnishment (Wingfield) and the garnishee (Georgia Marble) are determined as of the date of service of the writ of garnishment on the garnishee." Deloney v. United States Fidelity & Guaranty Co., 272 Ala. 560, 572 (Ala. 1961). The Alabama Supreme Court has stated that "the test in a garnishment proceeding is whether the garnishee (Georgia Marble), at the time of service of garnishment, owed defendant such a money demand as would support

---

[4] Again, the parties have agreed that Promac is the involved entity although some billings, etc. were by Project Systems.

[5] It is not clear that there was ever a mechanical or express final approval. The Government has acknowledged that all work was completed before October 31, 1996.

3

an action of debt or assumpsit by the judgment debtor." Id. "Under the law of garnishment, the money sought 'must be due absolutely and without contingency.'" Jim Davis & Co. v. Albuquerque Federal Savings & Loan Corp, 536 So.2d 55, 57 (Ala. 1988) (quoting Escambia Chemical Corp. v. United Insurance Co. of America, 396 So.2d 66 (Ala. 1981)). See also Foshee v. Lloyds, New York, 643 F.2d 1162, 1165-66 (5th Cir. 1981).

In the recorded discussion of January 22, 1998, the Government cited several cases which, according to it, support its position. The court cannot conclude that they do so. The court will briefly summarize why each case is distinguishable except for the general proposition that "only such debts as would maintain debt or indebitatus, assumpsit, if sued on by defendant, could be subject to [garnishment]." Otherwise, the cases are clearly distinguishable.

In Deloney v. United States Fidelity & Guaranty Co., 272 Ala. 560, 572 (Ala. 1961), the garnishee was not only not indebted to the defendant, the garnishee was owed an additional amount by the defendant by virtue of a surety agreement. No debt was accruing.

In Booker T. Washington, etc., v. Roberts, 238 Ala. 205, 153 So. 409 (Ala. 1934), the garnishee was not liable to the defendant under a void contract. No debt was accruing. Applying an exception to the general rule, not applicable here, the court remanded for the trial court to determine if funds received by the garnishee had been appropriately apportioned among various creditors.

Sloss v. Glaze, 231 Ala. 234, 164 So. 51 (Ala. 1935) is clearly inapplicable except to the extent that one of the general principles enunciated may aid Wingfield. Sloss involved an executory contract as to which there had been no performance.[6] Perhaps more importantly, the court repeatedly discusses the fact that equitable principles are applicable to garnishment proceedings. This court concludes that the application of equitable principles here favors Wingfield.

Papot v. Barbour, 165 Ala. 257, 51 So. 725 (Ala. 1910), did not involve a garnishment proceeding. It was simply an action between a building contractor and the owner. On the

---

[6] The court held that the parties to the subject contract had a right to cancel it. That is not true here.

4

surface Papot has more significance than the other cases cited by the Government. It does not involve, however, the equitable principles applicable to garnishment proceedings, particularly between contesting creditors as opposed to disputes between the principal parties to the contract.[7]

We think more applicable here is the language in Teague, Barnett & Co. v. Legrand, 85 Ala. 493, 5 So. 287 (Ala. ), where the court stated, "True, the debt need not be due and presently demandable; but there must be a contract, express or implied, out of which a money liability will certainly spring in the usual course of things." This case is clearly distinguishable from various cases where there was no obligation by the garnishee to the defendant and none was likely to "spring."

Certainly more applicable to this case than the cases cited by the Government are the following quotes:

> The lien, therefore, attaches to any debt of the garnishee to the defendant owing at the time of the service, or at the time of the answer, or becoming due at any time between the service and the answer or the contest thereof, or in the future, under a contract existing at the time of the service or answer.

Henry v. McNamara, 114 Ala. 117, 22 So. 428, 430 (Ala. 1897).

> If the garnishee, at the time of service of the garnishment, or at the time of making the answer, or at any time intervening between these two periods, was indebted to the defendant, Whiting, or if there was then existing a valid and binding contract by which such indebtedness would accrue in the future, this debt, unless exempted from legal process, was subject to garnishment, and the garnishing creditor would obtain a lien on it from the time of the service of the summons on the garnishee.

Archer v. People's Savings Bank, 88 Ala. 249, 7 So. 53, 54 (Ala. 1889). Also see Dothan Grocery Co. v. H.L. Wofford & Son, etc., 200 Ala. 490, 76 So. 432 (Ala. 1917).

This is not a case in which the indebtedness was contingent upon the making of a new contract, or the renewal of an existing one. This case involves a contract where the duty of payment "is fixed to result from the performance." Henry v. McNamara, 26 So. at 909.

In view of the Government's concession at the recorded conference that it has no prior lien if the debtor here had, under state law, property which was subject to garnishment before

---

[7] The Government also cites Yarbrough v. Williams, 533 So.2d 565 (Ala. 1988). This case has little, if any, significance except that its statement that "the promisor [here Georgia Marble] must exercise good faith. . . "

November 18, 1996, it is likely unnecessary that the court address the case of <u>United States by and through Internal Revenue Service v. McDermott</u>, 507 U.S. 447 (1993). This court notes, however, that <u>McDermott</u> is distinguishable. Here, Wingfield did not garnishee property not yet acquired by the debtor. It garnished an obligation, then in existence, as to which the debtor had a clear entitlement. Georgia Marble has never denied this entitlement in answer or other otherwise. <u>See</u> § 6-6-454, Code of Ala. 1975. The court notes that § 6-6-393, Code of Ala. 1975 provides that the garnishee is to answer "whether he will not be indebted <u>in the future</u> to him by a contract then existing. . . ." <u>Cf.</u> <u>United States v. Pioneer American Insurance Co.</u>, 374 U.S. 84 (1963).

    Even <u>McDermott</u> states that a state law lien has to be "'perfected' in the sense that 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" <u>Id.</u> At 449.   Here Wingfield, the lienor, the amount of the lien and the property (the amount due under the completed contract) were all clearly established. A full reading of both the majority and dissenting opinions in <u>McDermott</u> will suggest why its holding should not be extended to the facts here. The Government's primary argument is that Promac's interest in the funds did not arise until there was an indication of "final approval." Apparently, the Government attempts to equate the "after acquired" property in <u>McDermott</u> to a payment due provision. Even assuming that payment was not due until there was an express approval of some type,[8] that is vastly different from saying that the property was "after acquired." In <u>McDermott</u>, the debtor had no entitlement to or interest in the property until it was acquired. Here, the work had been admittedly completed by October 31, 1996 (see January 29 conference) and nothing of substance remained for Promac to do.

    Both common sense, equitable principles and the law mandate that Wingfield prevail. If the Government's argument is accepted, a creditor would have to constantly monitor a relationship as to which it may have no access or daily file garnishments on the hope that it might hit on the right day before the Government gives notice. This court cannot accept such

---

[8] The court does not so find and will leave that issue for the parties to further address in the event of an appeal.

an argument. Here, the debt was clearly certain to "spring" under a contract which was <u>not</u> executory but which had been performed.

This 29 day of January 1998.

                                                  ROBERT B. PROPST
                                           SENIOR UNITED STATES DISTRICT JUDGE

7